IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN R. ZYGMUNT[1] and            :
CHRISTIN L. ZYGMUNT,               :        No. 1:25-cv-01995
    Plaintiffs                 :
                                   :        (Judge Kane)
    v.                         :
                                   :
DEREK A. SNYDER and NORTHERN       :
YORK REGIONAL POLICE               :
DEPARTMENT,                        :
    Defendants                 :

## MEMORANDUM

Before the Court is Defendants Derek Snyder and Northern York Regional Police Department (together, "Defendants")' motion seeking partial dismissal (Doc. No. 5) of Plaintiffs Kevin Zygmunt and Christin Zygmunt (respectively, "Mr. and Mrs. Zygmunt" and collectively, "Plaintiffs")' complaint (Doc. No. 1-2).  For the following reasons, the Court will grant Defendants' motion.

## I.    BACKGROUND[2]

On or about July 17, 2022, Mr. Zygmunt recorded himself driving down a public road past the house of an individual named Andrew Pitman.  (Doc. No. 1-2 ¶ 8.)  Mr. Pitman called the police and reported Mr. Zygmunt's actions, complaining that Mr. Zygmunt had passed by his residence on two prior occasions.  (Id. ¶¶ 6, 9–10.)  Defendant Synder, a police officer employed by Defendant Northern York Regional Police Department ("NYRPD"), thereafter contacted Mr.

---

[1]  This Plaintiff's surname was entered into the docket as "Zgymunt."  However, it seems that a typographical error was made as the surname is consistently written as "Zygmunt" in the complaint and subsequent briefs.  (Doc. Nos. 1-2, 6, 8.)

[2]  The factual background is drawn from Plaintiffs' complaint (Doc. No. 1-2), the allegations of which the Court accepts as true for purposes of the pending motion to dismiss.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

Zygmunt, who denied any wrongdoing, declined to cooperate with Snyder's investigation, and threatened to sue if meritless criminal charges were filed against him. (Id. ¶ 13.) Plaintiffs allege that, as a result of Mr. Zygmunt's refusal to cooperate with Defendant Synder's investigation, Defendant Snyder subsequently charged him with stalking and harassment and proceeded to obtain an arrest warrant. (Id. ¶¶ 15–16.)

On or about July 17, 2022, Defendant Snyder and other agents of Defendant NYRPD forcibly arrested Mr. Zygmunt inside of his home. (Id. ¶ 17.) Plaintiffs allege, upon information and belief, that Defendant Snyder and the other NYRPD agents subsequently appeared at Mr. Zygmunt's preliminary hearing and requested that the magisterial district court deny him bail. (Id. ¶ 18.) The magisterial district court ultimately denied Mr. Zygmunt bail and remanded him to York County Prison. (Id. ¶ 19.) Mr. Zygmunt thereafter retained counsel, and moved for a bail modification. (Id. ¶ 20.) The magisterial district court granted Mr. Zygmunt's request and modified his bail to non-monetary but required a mental health evaluation prior to his release. (Id.) Despite the bail modification, Mr. Zygmunt remained incarcerated in York County Prison for over forty (40) days, which aggravated his existing medical condition—causing him pain, suffering, and further injury. (Id. ¶ 21.)

At Mr. Zygmunt's preliminary hearing, the York County District Attorney's Office withdrew the stalking charge due to insufficient supporting evidence. (Id. ¶ 22.) The magisterial district court thereafter found Mr. Zygmunt guilty of the harassment charge, and Mr. Zygmunt appealed. (Id. ¶ 23.) On or about December 14, 2022, Judge Ness of the York County Court of Common Pleas "heard Mr. Zygmunt's case at trial de novo," granted Mr. Zygmunt's motion for a judgment of acquittal, and dismissed the remaining harassment count. (Id. ¶ 24.)

2

On August 25, 2025, Plaintiffs filed the complaint that initiated this case in the York County Court of Common Pleas.  (Doc. No. 1-2.)  In their complaint, Plaintiffs allege that Defendants violated Mr. Zygmunt's constitutional rights and accordingly assert the following five counts under 42 U.S.C. § 1983: malicious prosecution against Defendant Snyder (Count I); retaliatory prosecution against Defendant Snyder (Count II); vicarious liability against NYRPD (Count III); negligent supervision and failure to train against NYRPD (Count IV); and loss of consortium against both defendants (Count V).  (Id.)  On October 23, 2025, Defendants removed this case to this Court.  (Doc. No. 1.)

On November 19, 2025, Defendants filed the instant partial motion to dismiss (Doc. No. 5), with their brief in support thereof following on December 3, 2025 (Doc. No. 7).  Also on December 3, 2025, just prior to the filing of Defendants' brief in support, Plaintiffs filed an unopposed motion to withdraw the following claims: vicarious liability against Defendant NYRPD (Count III); punitive damages against Defendant Synder in his official capacity; and punitive damages against NYRPD.  (Doc. No. 6.)  The Court subsequently granted this motion on December 30, 2025.  (Doc. No. 11.)  On December 16, 2025, Plaintiff filed their brief in opposition to Defendants' partial motion to dismiss (Doc. No. 8), and on January 9, 2026, after seeking an extension of time, Defendants filed their reply brief (Doc. No. 12).  Having been fully briefed, Defendants' motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.42 (3d Cir. 2010) (citations omitted).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded

factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.    DISCUSSION

Following Plaintiffs' withdrawal motion, the following claims remain pending in this case: malicious prosecution and retaliatory prosecution against Defendant Snyder (Counts I & II); negligent supervision and failure to train against Defendant NYRPD (Count IV); and loss of consortium against both defendants (Count V). Defendants move to dismiss Counts IV and V. As to the Section 1983 claims asserted against Defendant NYRPD, Defendants argue, principally, that said claims fail as a matter of law as police departments "are not a proper party to [] claim[s] brought under § 1983." (Doc. No. 7 at 6.) Defendants also request dismissal of the loss of consortium claim asserted by Mrs. Zygmunt against both defendants, arguing that such claims "are not cognizable under § 1983." (Id. at 14.)

### A.    Whether Defendant NYRPD is a Proper Defendant to Plaintiffs' Section 1983 Claims

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute provides, in relevant part, as follows:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim for relief under Section 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under the color of the state law."  See Harvey v. Plains Township Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 48 U.S. 42, 48 (1988)).

In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 (1978), the United States Supreme Court established that municipalities and "[l]ocal governing bodies" qualify as "persons to whom § 1983 applies," such that they may be held liable under the statute for injuries caused by constitutional violations.  Following Monell, numerous courts within this circuit concluded that municipal police departments—that is, police departments serving a single municipality—are not proper defendants to Section 1983 suits because they lack a legal identity separate from the municipalities they serve and are therefore not "persons" within the meaning of Section 1983.  See, e.g., Brown v. City of Shamokin Police Dep't, No. 21-cv-01992, 2021 WL 5937701, at *3 (M.D. Pa. Dec. 16, 2021) (stating that "while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not"); Shilling v. Brush, No. 05-cv-00871, 2005 WL 2100707, at *3 (M.D. Pa. Aug. 26, 2005) (noting that "police departments are not 'persons' within the meaning of 42 U.S.C. § 1983 [ ] [as they] are merely subunits of the city, as opposed to separate corporate entities"); Tobin v.

6

Badamo, 00-cv-00783, 2000 WL 1880262, at *2 (M.D. Pa. Dec. 20, 2000) (finding that "[t]he law provides that [a] municipal police department is not a proper party to a section 1983 action . . . ."); Johnson v. City of Erie, Pa., 834 F. Supp. 873, 878–79 (W.D. Pa. 1993) (dismissing municipal police department as a "an improper and unnecessary party" to a Section 1983 suit because it is a "sub-unit of the city government and, as such, is merely a vehicle through which the city fulfills its policing functions"); PBA Loc. No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 825–26 (D.N.J. 1993) (noting that "[t]he numerous courts [to] have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not") (collecting cases).  Courts outside this circuit have concluded the same.  See, e.g., Carr v. Seekonk Police Dep't, No. 24-cv-10123, 2024 WL 365208, at *2 (D. Mass. Jan. 31, 2024); Fields v. Montgomery County, No. 13-cv-03477, 2014 WL 4231164, at *2 (D. Md. Aug. 26, 2014); Rodriguez v. County of Contra Costa, No. 13-cv-02516, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013); Johnson v. Harris, No. 08-cv-00036, 2009 WL 277992, at *10 (E.D. Tenn. Feb. 5, 2009); Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 510–11 (D. Conn. 2008); Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984).  Although the Court has not identified a precedential Third Circuit Court of Appeals opinion holding that municipal police departments are not proper defendants to Section 1983 actions, it notes that the Third Circuit has endorsed the principle in two nonprecedential opinions.  See Jackson v. City of Erie Police Dep't, 570 F. App'x 112, 114 n.2 (3d Cir. 2014) (unpublished); Martin v. Red Lion Police Dep't, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (per curiam).

Citing to several of the foregoing cases, Defendants argue that "NYRPD is not a proper party to this action," and that the Section 1983 claims asserted against it must therefore be

7

dismissed with prejudice.  (Doc. No. 7 at 7–8.)  Plaintiffs, in turn, do not dispute the contention that municipal police departments are not proper defendants to Section 1983 suits.  (Doc. No. 8 at 7.)  Rather, they argue that NYRPD, as a regional police department serving multiple municipalities, is not a municipal police department (i.e., the political subdivision of a municipality) and is instead a separate entity qualifying as a "person" for Section 1983 purposes.  (Id. at 8–9.)  In support of their argument, Plaintiffs point to the authority relied on by Defendants, "all [of which] turn[s] on similar facts—a plaintiff sued a police department that serviced a single municipality."  (Id. at 7.)

Upon careful consideration of the complaint, the arguments of the parties, and relevant authority, the Court will grant Defendants' motion to dismiss the Section 1983 claims asserted against Defendant NYRPD.  The Court notes, as an initial matter, that although "the Third Circuit has[, in two nonprecedential opinions,] found that municipal police departments are not entities that can be sued under Section 1983, it has [never] addressed the immunity of regional police departments."  See Leathers v. Russo, No. 24-cv-00554, 2025 WL 327313, at *3 (W.D. Pa. Jan. 29, 2025) (rejecting a regional police department's argument that it cannot be sued under Section 1983 in part because "it is not clear that such an entity is treated the same as a municipal police department").  Defendants acknowledge the lack of Third Circuit precedent on this issue (Doc. No. 12 at 7), but nevertheless point to two cases within this district that dismissed regional police departments from Section 1983 suits pursuant to the same line of reasoning applied to municipal police departments.  See Vega v. Pocono Reg'l Police Dep't, No. 13-cv-01934, 2014 WL 2619557, at *3 (M.D. Pa. Apr. 25, 2014), report and recommendation adopted in part, rejected in part, 2014 WL 2624433 (M.D. Pa. June 12, 2014); Holland v. Pocono Reg'l Police

8

Dept., 13-cv-01406, 2013 WL 3973080, at *13 (M.D. Pa. July 1, 2013), report and

recommendation adopted, 2013 WL 3973080 (M.D. Pa. July 31, 2013).

The Court's review of the decisions in Holland and Vega reveals that neither case

resolves the issue presented herein. In both decisions, the Section 1983 claims asserted against

the regional police departments were dismissed through reliance on case law concerning

municipal police departments specifically,[3] without any acknowledgment or discussion of a

potential difference in legal status or structure between regional and municipal police

departments given that the former uniquely services multiple municipalities. See Holland, 2013

WL 3973080, at *13; Vega, 2014 WL 2619557, at *3. Without such a discussion, those cases

cannot stand for the proposition that regional police departments lack a legal identity distinct

from the municipalities in which they serve, or illustrate how liability should be allocated if a

regional department is dismissed as an improper defendant to a Section 1983 suit. Moreover,

although the court in Holland seems to suggests that, even in Section 1983 suits involving

regional police departments, "it is a municipality through which any liability must flow to the

police department," see Holland, 2013 WL 3973080, at *13, the facts in Trethaway v. Pizano,

No. 23-cv-01523, 2024 WL 1468350 (M.D. Pa. Apr. 4, 2024) demonstrate that this is not

invariably the case.

The plaintiff in Trethaway was employed as a police officer by the Borough of Wyoming

in Luzerne County, Pennsylvania. See Trethaway, 2024 WL 1468350, at *1. During the course

of the plaintiff's employment, five municipalities, including the Borough of Wyoming, joined

together to form the Wyoming Area Regional Police Commission ("Commission"), which was

---

[3]  The court in Vega cited to Holland, see Vega, 2014 WL 2619557, at *3, but not for the
proposition that regional police departments in particular are improper defendants to Section
1983 suits.

tasked with overseeing the recently formed Wyoming Area Regional Police Department.  See id. at *1.  After the plaintiff was denied a position in the Wyoming Area Regional Police Department, he sued one of the member municipalities, among other defendants, under Section 1983, alleging that the municipality had a policy or practice of discrimination and retaliation, and that this policy or practice was the moving force behind the decision not to hire him for a position with the regional police department.  See id. at *6.  In response, the municipality argued that it could not be held liable under Section 1983 because the Commission, "a separate legal entity," made the decision not to hire the plaintiff, as "the Commission, not the municipalities, had the authority to hire police officers for the regional police department."  See id.  In support of its argument, the municipality attached a copy of the relevant intergovernmental cooperation agreement which stated that "Regional Department police officers and civilian personnel [are] employees of the Commission" and that the Commission held express authority and power to "hire, fire, suspend, promote, demote, discipline, and otherwise deal with employees."  See id. Given the language in the agreement, the court in Trethaway determined that it could not conclude that the subject municipality could be held liable under Section 1983, as "it would appear that the policies and practices regarding the hiring of regional police department officers and employees are exclusively left to the Commission."  See id. at *7.  The district court accordingly dismissed the Section 1983 claim against the municipality with prejudice.  See id. Here, because the complaint lacks factual allegations regarding the formation of the NYRPD or any agreement governing its operation, the Court is unable to discern whether NYRPD, its

member municipalities, or some other entity possesses the requisite legal status and authority such that it could be held potentially liable for Plaintiffs' Section 1983 claims.[4]

Presented with such uncertainty, the Court finds instructive the decision in Ankney v. Paradise Township, No. 24-cv-01654, 2025 WL 2884820 (M.D. Pa. Oct. 9, 2025), which addressed a similar issue with respect to the NYRPD's liability under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("Title II of the ADA").  There, as here, the NYRPD argued that it was "not a proper defendant to [Plaintiffs'] ADA claim" because municipal police departments lack a legal identity distinct from the municipalities they serve. See Ankney, 2025 WL 2884820, at *9.  The Ankney court acknowledged that, although police departments qualify as public entities under Title II of the ADA, "they are improper defendants to name in a Title II action, and improper defendants generally, if they have no separate legal identity from their corresponding municipality." See id. (emphasis added).  The Ankney court noted that the NYRPD had not explained its legal status in relation to the municipalities within its jurisdiction and instead relied on the proposition that "as a police department, it lacks a unique legal identity and cannot be sued pursuant to Title II of the ADA." See id. at *11.  Unable to determine from the allegations in the complaint that the NYRPD possessed a distinct legal identity, the Ankney court accordingly dismissed the Title II claim asserted against the NYRPD.  See id.  In doing so, the Ankney court stressed that it was "not concluding that Defendants are correct in their assertion that the Northern [York] Regional Police Department cannot be sued pursuant to Title II of the ADA" but only that "[p]laintiffs have not, at the

---

[4]  The sole reference to the NYRPD's organization is contained in paragraph five of the complaint, which states only that "Defendant Northern York Regional Police Department is a police department and state governmental agency that provides police services to several municipalities in Northern York County, Pennsylvania."  (Doc. No. 1-2 ¶ 5.)

pleading stage, provided sufficient information to determine that the Northern [York] Regional

Police Department is a unique legal entity capable of being sued." See id.  Like in Ankney,

Plaintiffs here have failed to plead facts sufficient to plausibly suggest that the NYRPD is a

distinct legal entity subject to Section 1983 liability.  Accordingly, the Court will dismiss the

Section 1983 claims asserted against Defendant NYRPD.[5]

>    **B.      Whether Mrs. Zygmunt's Loss of Consortium Claim is Cognizable Under Section 1983**

As Count V of the complaint asserts a loss of consortium claim against both defendants,

and having found that Plaintiffs have not plausibly alleged that Defendant NYRPD is a legal

entity potentially subject to Section 1983 liability, the Court turns to whether this claim is

properly asserted against Defendant Snyder under Section 1983.  The Court notes that its

research reveals that the Third Circuit has yet to address the viability of a loss of consortium

claim brought by the spouse of an injured Section 1983 plaintiff.  In fact, the Third Circuit

expressly declined to address the issue on two occasions.  See Livingstone v. North Belle Vernon

Borough, 12 F.3d 1205, 1215 n.10 (3d Cir. 1993) (stating that "[Defendants] contend that . . .

Mr. Livingstone's claim for loss of consortium is not recognized under [S]ection 1983 . . . . [w]e

do not consider [this] argument[ ]"); Kulwicki v. Dawson, 969 F.2d 1454, 1467 & n.15 (3d Cir.

1992) (noting that the court would not address the merits of the Section 1983 claims, of which

loss of consortium was one such claim, on interlocutory appeal).  Nevertheless, district courts

within this circuit have consistently held that such claims are not cognizable under Section 1983.

See, e.g., Dean v. Works, No. 19-cv-04266, 2019 WL 6828607, at *5 (E.D. Pa. Dec. 12, 2019)

(stating that "[t]here is no right to recover for loss of consortium . . . based on civil rights claims

---

[5]  As the Court will dismiss the Section 1983 claims asserted against Defendant NYRPD on this basis, it does not reach the plausibility of Plaintiffs' Section 1983 negligent supervision and failure to train claim.  (Doc. No. 1-2 ¶¶ 50–54.)

under Title VII, the PHRA or § 1983"); Swaney v. Jordan, No. 10-cv-00521, 2011 WL 1485969, at *7 n.4 (W.D. Pa. Apr. 19, 2011) (noting that "civil rights violations cannot support loss of consortium claims"); Taylor v. Pilewski, No. 08-cv-00611, 2008 WL 4200247, at *2 (W.D. Pa. Sept. 8, 2008) (concluding that "[i]t is well established that[ ]a spouse has no standing to assert Section 1983 claims based on violations of the other spouse's civil rights"); Ballas v. City of Reading, No. 00-cv-02943, 2001 WL 73737, at *7 (E.D. Pa. Jan. 25, 2001) (noting that "Section 1983 permits suit for the abridgment only of one's own constitutional rights"); Quitmeyer v. Southeastern Pa. Trans. Auth., 740 Supp. 363, 370 (E.D. Pa. 1990) (stating that "there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights").

Defendants contend that Mrs. Zygmunt lacks standing to assert claims against them based on the actions allegedly taken against her husband, except through a derivative theory of liability such as loss of consortium.  (Doc. No. 7 at 14.)  However, noting the decisions from courts within this circuit, Defendants maintain that any such claim brought by Mrs. Zygmunt pursuant to Section 1983 fails as a matter of law because "claims for loss of consortium are not cognizable under § 1983."  (Id.)

In response, Plaintiffs cite Pahle v. Colebrookdale Township, 227 F. Supp. 2d 361 (E.D. Pa. 2002) for the proposition that not all loss of consortium claims are derivative and thus inactionable under Section 1983, as some may be predicated on a violation of the spouse's own constitutional rights.  (Doc. No. 8 at 12.)  In Pahle, the district court reasoned that the rights recognized by the Third Circuit in Estate of Bailey v. County of York, 768 F.2d 503, 509 n.7 (3d Cir. 1985), namely, that parents possess a liberty interest in their child's life and physical safety permitting them to assert Section 1983 claims, "logically extend[s] to spouses," such that:

a husband or wife should be able to claim violations of his or her own constitutional rights under § 1983 for unlawfully, government-imposed injuries to a spouse that have a devastating impact on their marriage; namely, he or she can allege deprivation of consortium without Due Process of law.

See Pahle, 227 F. Supp. 2d at 381. To find a constitutional liberty interest in the relationship between spouses, the district court in Pahle relied primarily on Supreme Court precedent concerning privacy in the marital relationship to conclude that "marital integrity and spousal association" implicate constitutional due process rights. See id. at 382 (citing Maynard v. Hill, 125 U.S. 190, 205 (1888), and Griswold v. Connecticut, 381 U.S. 479, 486 (1965)).

Upon careful consideration of the complaint, the parties' arguments, and relevant authority, the Court will grant Defendants' motion to dismiss Mrs. Zygmunt's loss of consortium claim irrespective of whether it asserts direct—as opposed to derivative—Section 1983 liability. The Court notes that the idea that individuals possess a liberty interest in the consortium of their spouses permitting them to assert Section 1983 claims is—by the Pahle court's own assertion—a "novel argument," see id. at 394, and has never been addressed, let alone recognized, by either the Supreme Court or the Third Circuit. See Norcross v. Town of Hammonton, No. 04-cv-02536, 2006 WL 1995021, at *2 (D.N.J. July 13, 2006) (finding that "[w]hile the Supreme Court has recognized constitutional protection for rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion, the Court has never sanctioned constitutional protection of consortium") (internal quotation marks omitted); Thompson v. Dep't of Servs. for Child., Youth & their Famlies, No. 18-cv-01236, 2019 WL 4222647, at *8 (D. Del. Sept. 5, 2019) (noting that "[t]he Third Circuit . . . has yet to address whether a spouse may recover for his own, direct loss of consortium claim relating to a liberty interest in consortium"); Shick v. Pennsylvania Dep't of Corr., No. 18-cv-00253, 2019 WL 4016139, at *5 n.2 (W.D. Pa. Aug. 26, 2019) (stating that

14

"[t]he Third Circuit has never adopted the Eastern District's reasoning in Pahle").  Nor does it seem that the Pahle court's findings have been embraced by other district courts considering the issue.  See, e.g., Engebretson v. Mahoney, No. 09-cv-00098, 2010 WL 1490362, at *5–*6 (D. Mont. Mar. 3, 2010) (explaining that "the majority of federal courts" have concluded that spousal consortium is not a constitutional liberty interest cognizable under § 1983), report and recommendation adopted, 2010 WL 1487993 (D. Mont. Apr. 13, 2010); Edwin v. Simpson, No. 08-cv-01330, 2009 WL 10673448, at *2–*3 (D. Ariz. June 4, 2009) (declining to recognize any constitutional right to spousal consortium and dismissing wife's § 1983 claim); Pagan v. Township of Raritan, No. 04-01407, 2006 WL 2466862, at *10 (D.N.J. Aug. 23, 2006) (declining to adopt the Pahle court's reasoning because "constitutional protection of privacy is not equivalent to constitutional protection of the relationship; nor is consortium equivalent to marriage"); Norcross, 2006 WL 1995021 at *3 (finding that "there exists no constitutional interest in the consortium of one's spouse" and noting that the Supreme Court itself has warned that it has "always been reluctant to expand the concept of substantive due process") (citation omitted); Harbury v. Deutch, 233 F.3d 596, 605–07 (D.C. Cir. 2000) (finding no constitutional right to spousal consortium because the Supreme Court has only recognized constitutional rights to family relations in parent-child contexts).  Given the novelty and lack of support for the Pahle court's findings, relied on by Plaintiffs, and finding persuasive the prevailing position among courts within this circuit of dismissing loss of consortium claims asserted under Section 1983, the Court will accordingly grant Defendants' motion to dismiss Mrs. Zygmunt's Section 1983 loss of consortium claim asserted against both defendants with prejudice.

### C.    Leave to Amend

Plaintiffs failed to request leave to amend their complaint in their brief opposing Defendants' partial motion to dismiss.  (Doc. No. 8.)  Nonetheless, as this is a civil rights case, the Court must <u>sua</u> <u>sponte</u> provide leave to amend unless doing so would be inequitable or futile. See <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251–52 (3d Cir. 2007).  Because it is conceivable that the above identified pleading deficiencies as to Plaintiffs' Count IV claim against Defendant NYRPD could be cured through amendment, the Court will accordingly provide Plaintiffs leave to file an amended complaint as to that claim.  See <u>Ankney</u>, 2025 WL 2884820, at *11 (finding amendment not futile where plaintiffs failed to plead facts sufficient to establish that the regional police department was a distinct legal entity capable of being sued and thus a proper defendant to the action).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendant's partial motion to dismiss (Doc. No. 5) but provide Plaintiffs leave to file an amended complaint that attempts to correct the pleading deficiencies identified herein as to Count IV of the complaint.  An appropriate Order follows.

 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

16